IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-03143-SKC-SBP

THE ESTATE OF AMY LYNN CROSS, by and through its personal representative, Jennifer Bauder,
V.C., through his guardian, Jennifer Bauder,
R.C., through his guardian, Jennifer Bauder, and
K.C., through her guardian, Lisa McMullen,

    Plaintiffs,

v.

TURN KEY HEALTH CLINICS, LLC,
TURN KEY HEALTH CLINICIANS, PLLC,
TURN KEY HEALTH CLINICS COLORADO, LLC,
TURN KEY HEALTH MEDICAL COLORADO, PLLC,
ERICA ALCARAZ, individually,
BEATRIZ ORTIZ, individually,
KRISTIN MILLER, individually,
TERESA SIPOLA, individually,
BOARD OF COUNTY COMMISSIONERS, WELD COUNTY, and
SHERIFF STEVE REAMS, in his official capacity,

    Defendants.

---

**ORDER OVERRULING
DEFENDANT TURN KEY HEALTH CLINICS, LLC'S
OBJECTION TO ORDER ON MOTION TO COMPEL (DKT. 118)
AND FINDING AS MOOT ITS MOTION TO STAY PRODUCTION OF
DISCOVERY PENDING RULING ON OBJECTION (DKT. 119)**

---

While in the custody of the Weld County Sheriff, Amy Lynn Cross passed away.

Her Estate and related Plaintiffs have brought this action against Defendants—who

1

are alleged to have provided her medical care while in custody—alleging they provided her with constitutionally deficient medical care resulting in her death.

Defendant Turn Key Health Clinics, LLC (Turn Key) filed a motion to dismiss (Dkt. 13), but District Judge Daniel D. Domenico denied that motion (Dkt. 60).[1] Important here, Judge Domenico found the Complaint identified "at least nine cases with facts similar to Ms. Cross's." Dkt. 60, p.7. He continued, "These cases across the United States paint a plausible picture that Turn Key delays medical care to inmates to reduce financial costs even at the occasional human cost of their inmates' lives." *Id.* He found Plaintiffs had plausibly alleged a 42 U.S.C. § 1983 *Monell* claim against Turn Key. *Id.* at p.5; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

After Judge Domenico's Order denying Turn Key's Motion to Dismiss, Plaintiffs filed their Motion to Compel seeking an order compelling Turn Key to produce "three categories of documents: (1) Morbidity & mortality reviews ('sentinel events'); (2) Defendants' personnel files; and (3) Contract and Budget documents." Dkt. 76, p.3. The Motion to Compel was referred to Magistrate Judge Susan Prose. Judge Prose held an informal discovery conference on the matters raised in the Motion and received discovery statements from the parties. Dkt. 116, pp.7-8. After receiving Turn Key's Response (Dkt. 80) and ordering supplemental briefing and receiving the same (Dkts. 110, 112), Judge Prose issued her Order on Plaintiffs'

---

[1] This matter was reassigned to the undersigned District Judge on January 19, 2024.

2

Motion to Compel Discovery (Order) (Dkt. 116). The Order granted the Motion to Compel and ordered Turn Key to "supplement its responses and productions to RFP Nos. 14, 20, and 23 by November 8, 2024, or to confer with Plaintiffs to extend that date if necessary." *Id.* at p.28. The Order further advised the parties they had 14 days after service of the Recommendation to serve and file specific written objections to it for this Court's consideration, citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72.

Turn Key timely filed a 2 and 1/2-page Objection[2] (Dkt. 118) to Judge Prose's 28-page Order.[3] It also concurrently filed a Motion to Stay Production of Discovery Pending Ruling on Objection (Motion to Stay). Dkt. 119. Plaintiffs filed their Response to the Objection (Dkt. 126) and their Response to the Motion to Stay (Dkt. 127). The Court, as explained below, overrules the Objection. And because it overrules the Objection, the Court denies as moot the Motion to Stay.

---

[2] The Court observes that Turn Key referred to Magistrate Judge Prose throughout its Objection as "Magistrate." Since 1990, those who hold Judge Prose's position across the country have been known as "United States Magistrate *Judges*." Judicial Improvements Act of 1990, codified in part at 28 U.S.C. § 631 (emphasis added). That means, of course, that the title of "Magistrate Judge" has been in use for 34 years. Omission of the word "Judge" from the title may reflect mere carelessness, but it is nevertheless inappropriate and should not be repeated going forward in this or any federal court.

[3] The body of the Objection is approximately 2 and 1/2 pages, exclusive of the caption, signature, and certificate of service, and the body of the Order is approximately 28 pages, exclusive of the caption and signature.

3

## LEGAL STANDARDS

"Discovery is a nondispositive matter . . . ." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997). A party may object to a magistrate judge's non-dispositive ruling, but it "may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a). When reviewing an objection to a magistrate judge's non-dispositive ruling, the Court must affirm the ruling unless it finds that the ruling is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Ariza v. U.S. West Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation marks omitted). The "contrary to law" standard permits "plenary review as to matters of law," *see* 12 Charles Alan Wright *et al.*, Federal Practice & Procedure § 3069 (2d ed., Apr. 2016 update), but the Court will set aside a magistrate judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly, *see Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002). In short, "[b]ecause a magistrate judge is afforded broad discretion in the resolution of non-dispositive . . . disputes, the court will overrule the magistrate judge's determination only if [her] discretion is abused." *Ariza*, 167 F.R.D. at 133.

## FINDINGS AND ORDERS

Turn Key's cursory objection to Judge Prose's Order falls far short of the legal standard required to overrule it. It utterly fails to demonstrate that the Order is clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Moreover, this is not a situation where the undersigned might have ruled differently from Judge Prose had it addressed the Motion directly. *See Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, No. 20-cv-2352-WJM-JPO, 2024 WL 3963505, at *5 (D. Colo. Aug. 16, 2024) ("In sum, while the Court might have ruled differently than [the Magistrate Judge] had it been tasked with deciding this issue in the first instance, the Court is nonetheless mindful that the standard of review instructs the Court to leave the underlying ruling undisturbed absent clear error. And, as discussed, the Court is not convinced that Defendants have cleared that high bar."). To the contrary, even under a *de novo* review, the undersigned would have ordered Turn Key to supplement its discovery productions as Judge Prose did.

Turn Key concludes its Objection stating, "Turn Key objects to the Magistrate Judge's granting of Plaintiff's request for all sentinel event records with no limitation as to time or geographic scope."[4] Dkt. 118, p.3. This is the clearest statement as to what Turn Key is objecting to. But, unfortunately, that is not what Judge Prose ordered. Instead, she ordered Turn Key to supplement its discovery responses

---

[4] Turn Key does not raise anything suggesting it objects to other parts of Judge Prose's Order, and thus waives any other potential objections. *See* Fed. R. Civ. P. 72(a).

concerning certain sentinel events—"Turn Key must produce any sentinel event records concerning other inmates of the Weld County Jail while Turn Key provided services there," and "the sentinel event records concerning the nine individuals from other facilities." Dkt. 116, pp.13, 14 (emphasis removed). Turn Key provided services at the Weld County Jail for only a three year period, which the Court understands encompasses the deaths of three individuals besides Ms. Cross. Judge Prose concluded her analysis of this issue:

> In short, Turn Key shall promptly and fully respond to RFP Nos. 14 and 23. If Turn Key does not have sentinel event *reports* that are responsive to these requests, it shall nonetheless produce any non-privileged communications relating to Ms. Cross's death and the deaths or serious injuries of the twelve other inmates at issue. This is the relief that Plaintiffs' counsel requested during the Discovery Conference if Turn Key has no sentinel event reports, and Turn Key has not shown it would be objectionable.

*Id.* at p.19 (emphasis in original).

Turn Key overstates what Judge Prose ordered. She ordered it to produce a limited set of materials related to the three-year period that it provided services at the Weld County Jail. *Id.* at p.13. And she ordered it to produce the sentinel event materials from other facilities for nine specific individuals, which had each already led to prior litigation. *Id.* at p.17. Moreover, the nine individuals were individuals that Judge Domenico *had already found relevant*, at the motion to dismiss stage, to the *Monell* claim in this case, which Turn Key acknowledged. *Id.* at p.14; *id.* at p.15 ("Judge Domenico denied Turn Key's motion to dismiss and concluded that the nine individuals in question allegedly died or were seriously injured in ways that were

6

sufficiently similar to Ms. Cross's death to plausibly support the widespread policy that Plaintiffs allege against Turn Key. Judge Domenico's order in itself suffices for this court to find that RFP No. 23 seeks information that is directly relevant to Plaintiffs' claim."); Dkt. 60, p.7 ("The Estate does identify, however, at least nine cases with facts similar to Ms. Cross's. . . . These cases across the United States paint a plausible picture that Turn Key delays medical care to inmates to reduce financial costs even at the occasional human cost of their inmates' lives." (citations omitted)).

Additionally, the Court finds that Turn Key fails to offer any significant argument and support for its position that Judge Prose's Order is somehow overly expansive in what it requires. *See* Dkt. 118, pp.1-3. It merely regurgitates a Cliff Notes version of its longer argument to Judge Prose. *Compare* Dkt. 118, pp.1-3 (Objection) *with* Dkt. 80, pp.3-7 (Response). In short, the Court finds nothing in the Objection carries Turn Key's high burden of demonstrating Judge Prose's Order is clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). The Objection is OVERRULED and the Motion to Stay is DENIED AS MOOT.

It is ORDERED that Turn Key fully and timely comply with Judge Prose's Order and that it file a notice of its compliance with that order within 24 hours of serving the required production or supplement on Plaintiffs.[5]

---

[5] Given the cursory nature of Turn Key's Objections after the abundant time and effort Judge Prose put into the discovery dispute, and considering the Objection covers ground *already previously ruled on* by Judge Domenico, and objects to things Judge Prose never ordered or found, and considering the timing of the Objection in relation to the parties' upcoming mediation and 30(b)(6) deposition of Turn Key, the

7

DATED: November 7, 2024.

BY THE COURT:

_____
S. Kato Crews
United States District Judge

---

Court has concerns over the potentially dilatory nature of the filing. Turn Key is reminded of its obligation under Fed. R Civ. P. 1 to avail itself of the procedures available to it this civil action but only in a manner "to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.*